IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DAVID B. KEEP, | ) | CASE NO. 8:03CV458 |
|     Plaintiff, | )<br>)<br>) | |
| vs. | )<br>) | MEMORANDUM<br>AND ORDER |
| TROY AKSAMIT, JEROME THRAEN, individually and in their official capacities as police officers, and the CITY OF LINCOLN, | )<br>)<br>)<br>)<br>) | |
|     Defendants. | ) | |

This matter is before the Court on the Motion for Summary Judgment submitted by Defendants Troy Aksamit and Jerome Thraen, in their official capacities[1], and the City of Lincoln. (Filing No. 101). The parties have filed briefs and indexes of evidence in support of their respective positions. For the reasons stated below, summary judgment will be granted on all claims except a single, state-law claim against Aksamit.

Before I address the substance of the Motion for Summary Judgment, two motions related to the evidentiary record must be addressed. First, at Filing No. 117, the Defendants have moved to strike the Plaintiff's affidavits or the portions of the affidavits that do not satisfy the requirements of Fed. R. Civ. P. 56(e). The Plaintiff has not responded to this Motion to Strike. The Defendants note that affidavits submitted by the Plaintiff at Filing No. 112 are made without personal knowledge, contain hearsay, and purport to state conclusions of law; that documents included in the same filing are not authenticated by affidavit; and that the corresponding references in the Plaintiff's brief are

---

[1] On January 4, 2005, summary judgment was granted in favor of Aksamit and Thraen in their individual capacities based on qualified immunity, with respect to the Plaintiff's claims under 42 U.S.C. §1983. (See Filings No. 68 and 77).

also objectionable. As with the last evidentiary record submitted by the Plaintiff in response to the Defendants' motion for summary judgment in their personal capacities, the Plaintiff's current submissions contain many statements by affiants relating inadmissable hearsay and conclusions of law, and several documents that are not authenticated by affidavit or otherwise. While the Defendants' motion to strike is well-taken, I will not strike the objectionable evidentiary materials from the record, but I will not consider the statements that constitute inadmissable hearsay or conclusions of law, nor to documents that lack proper authentication.

Second, the Plaintiff has moved at Filing No. 122 for leave to file "late evidence and brief" and has asked that the Court reconsider its order (Filing No. 121) ruling on the Plaintiff's earlier motion for extension of time. Essentially, on September 6, 2005, the Plaintiff moved for an extension of time in which to respond to the Defendants' pending Motion for Summary Judgment until September 23, 2005 (Filing No. 108). On September 12, 2005, the Plaintiff submitted a brief and index of evidence[2] in response to the Motion for Summary Judgment, and on September 26, 2005, I denied the motion to extend as moot. The Plaintiff's motion for leave to file "late evidence and brief" will be denied. There is no need for the Court to reconsider its ruling of September 26, 2005 (Filing No. 121), because even if the Plaintiff's motion to extend had been granted rather than denied as moot, the extension of time would have expired on September 23, 2005.

---

[2]The Plaintiff's Index of Evidence lists eight evidentiary submissions by number. The evidence was not filed in the manner listed in the Index, however. In this Memorandum and Order, I will refer to the Plaintiff's evidentiary submissions by their filing number in the Court's official record.

**FACTS**

The former plaintiff, David B. Keep ("Keep"), died on December 21, 2004, and the special administrator of his estate, Sharon Elder-Keep ("Elder-Keep"), has been substituted as the Plaintiff in this action. (Filings No. 78, 83). Earlier motions filed on Keep's behalf, indicate that Keep's death was the result of liver and stomach ailments unrelated to the facts of this case. (See, *e.g.*, Filings No. 45, 49). The Amended Complaint is not verified, nor is there any affidavit or deposition from Keep presenting his sworn testimony to the Court.

At all times relevant to this action, Keep was a resident of Lincoln, Nebraska (Amended Complaint, Filing No. 3, ¶6; Answer to Amended Complaint, Filing No. 15, ¶6), and Aksamit and Thraen were employees of the City of Lincoln, working for the Lincoln Police Department ("LPD") (Amended Complaint ¶7; Answer to Amended Complaint ¶7).

On November 3, 2002, at approximately 10:00 p.m., Keep was driving a van in Lincoln, and Elder-Keep was a passenger in the van. (Affidavit of Elder-Keep, Filing No. 112, attachment 8 ("Elder-Keep Aff.") ¶3a). Elder-Keep asked Keep to take her to the hospital because she was sick.[3] (*Id.*). Elder-Keep heard Keep talking on his cell phone with Elder-Keep's son, "A.J.," telling him to call 911 to request a police escort. (Elder-Keep Aff. ¶3b). A.J. Peithman, Elder-Keep's son, called the Lincoln 911 operator, requested a cruiser escort for the van, and called Keep to tell him that an escort would be sent. (Elder-Keep Aff. ¶3c; Affidavit of A.J. Peithman, Filing No. 112, Ex. 7 ("Peithman Aff."), ¶¶2-3).

---

[3] The Amended Complaint alleges that Elder-Keep was critically ill and told Keep that she believed she was dying. (Amended Complaint ¶¶9, 10, 20).

3

Thraen, an LPD Sergeant on patrol, saw that Keep's van had no license plates. (Affidavit of Jerome Thraen, Filing No. 103, Ex. 1, ("Thraen Aff.") ¶¶1-3). Thraen activated the overhead lights on his patrol car and attempted to stop Keep's van. (*Id.* ¶3). Thraen pursued the van for approximately 18 blocks, with his overhead lights activated. (*Id.*). Keep stopped his van at a red light, and as the light turned green, Thraen used his public address ("PA") system to tell Keep to pull over to the right side of the curb after he cleared the intersection. (*Id.* ¶ 4). Instead, Keep accelerated, and Thraen activated his siren, because he perceived that Keep was fleeing. (*Id.* ¶4). Keep drove through a red light, and ultimately stopped in front of the entrance to a hospital. (*Id.* ¶¶5-6). Thraen pulled his patrol car in front of Keep's van. (Id. ¶6).

Aksamit, an Officer with LPD, was driving a separate patrol car when he saw Thraen activate his overhead lights in an attempt to stop Keep's van. (Affidavit of Troy Aksamit, Filing No. 103, Ex. 2 ("Aksamit Aff.") ¶¶1-2). Aksamit also heard Thraen use his PA system to direct Keep to pull over. (*Id.* ¶3). Aksamit joined in the pursuit, activating his overhead lights and siren. (*Id.* ¶4). Elder-Keep saw the two police cruisers following the van with their overhead lights activated, but did not hear any officer tell Keep to pull over. (Elder-Keep Aff. ¶3c-e). Aksamit recognized Keep as the same individual he had contacted approximately two hours earlier in connection with a disturbance at a Lincoln restaurant, at which time Aksamit believed Keep was intoxicated. (*Id.* ¶5). Aksamit saw the van run the red light, and pursued the van into the hospital parking lot where he parked his patrol car behind the van. (*Id.* ¶¶6-7).

4

At this juncture, the parties' statements concerning the events that transpired that evening are materially different.

The Defendants' affidavits present the following factual scenario: Keep and Aksamit exited their vehicles. (Thraen Aff. ¶7; Aksamit Aff. ¶8). Aksamit did not hear any radio dispatch regarding a possible medical emergency in Keep's vehicle. (Aksamit Aff. ¶11). Aksamit told Keep to remove his hand from his coat pocket and get back in the van. (Aksamit Aff. ¶8). Keep did not comply, but proceeded towards Aksamit, then turned and moved around the rear of the van. (*Id.*). Aksamit repeatedly told Keep to remove his hand from his pocket, put his hands on his head, and lie on the ground, but Keep did not comply with the commands. (*Id.* ¶8). Aksamit took Keep to the ground from behind, causing the front of Keep's body to hit the concrete, and wrestled Keep's hand out of his pocket to place him in handcuffs. (*Id.* ¶¶9-10). Keep had no weapon. (*Id.* ¶10). After Aksamit had exited his vehicle and seconds before he took Keep to the ground, Thraen did hear a radio dispatch regarding a possible medical emergency in Keep's vehicle. (Thraen Aff. ¶7).

Elder-Keep's affidavit presents the following, substantially different picture:[4] Keep exited the van at the hospital, put his arms up, and called for help. (Elder-Keep Aff. ¶3j). Keep's pockets were sealed shut and he had nothing in his hands. (*Id.* ¶3m). No officer gave any orders or directions to Keep. (*Id.* ¶3j). Keep went around the van from behind,

---

[4] In my order of January 4, 2005, I expressed a variety of concerns about Elder-Keep's allegations (see Filing No. 68, pp. 8-9) and ultimately granted the Defendants' motion for summary judgment in their individual capacities on the section 1983 claims, because Elder-Keep's statements were not presented in a signed and sworn affidavit in compliance with the rules of this Court. (*Id.*, and Memorandum and Order at Filing No. 77).

and opened the passenger door. (*Id.* ¶3k-l).  An officer grabbed Keep from behind, threw him to the ground, and kicked and hit him as he lay silent and motionless. (*Id.* ¶3l).

Elder-Keep alleges that Keep suffered a variety of physical injuries as a result of Aksamit's use of force. (Amended Complaint, ¶23). It is undisputed that as a result of these events, Keep was charged with driving while intoxicated, fleeing to avoid arrest, no valid operator's license, and no valid registration. (Affidavit of Joseph Rupp, Filing No. 103, Ex. 3, attachment pp. 2-3). Keep pled no contest to the charge of driving while intoxicated, and the remaining charges were dismissed. (*Id.*, p. 9).

It is also undisputed that Thraen was not Aksamit's supervisor and did not decide the type or amount of training Aksamit received. (Thraen Aff. ¶8).  Aksamit received approximately 44 hours of instruction in defensive tactics and use of force at the LPD police academy and 5.5 hours of continuing education on those topics between August 2000 and the incident of November 3, 2002; and passed a series of exams that tested, among other things, his knowledge of appropriate levels of use of force. (Affidavit of Robert Kawamoto, Filing No. 103, Ex. 5 ("Kawamoto Aff.") ¶¶5-7). The LPD use-of-force policy requires the use of verbal commands first; then soft, empty-hand techniques if a subject resists in a passive or defensive manner; then hard empty-hand techniques when a subject resists in an active or aggressive manner; then use of intermediate weapons if hard empty-hand techniques are ineffective; and, finally, lethal force in the defense of human life or to defend a person in immediate danger of serious bodily harm. (*Id.* ¶3; Affidavit of Terrence Sherrill, Filing No. 103, Ex. 4 (Sherrill Aff.") ¶2 and Attachment A to affidavit). LPD does not retain officers who do not pass the academy training. (Kawamoto Aff. ¶7). LPD requires the reporting of an officer's use of force, and a three-tier review of

such reports. (*Id.* ¶9). LPD disciplines or requires follow-up training for officers who fail to comply with LPD's use-of-force policy. (*Id.* ¶10).

## STANDARD OF REVIEW

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©); *Philip v. Ford Motor Co.*, 328 F.3d 1020, 1023 (8th Cir. 2003). The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56©)). The proponent need not, however, negate the opponent's claims or defenses. *Id.* at 324-25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.* at 586.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249-50 (citations

7

omitted). Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327.

### ANALYSIS

Although Congress intended "municipalities and other local government units to be included among those persons to whom § 1983 applies," *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658, 688 (1978), a local governing body cannot be held liable under section 1983 for an injury inflicted solely by its employees or agents on a theory of *respondeat superior*. *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 653-4 (8th Cir. 1998). Rather, a political subdivision may be held liable for unconstitutional acts of its employees that "implement or execute an unconstitutional policy or custom of the subdivision." *Johnson v. Outboard Marine Corp.,* 172 F.3d 531, 535-36 (8th Cir. 1999) (citing *Monell,* 436 U.S. at 694).

A "policy" has been defined as "an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters," *Mettler v. Whitledge,* 165 F.3d 1197, 1204 (8th Cir. 1999), and a "custom" as a "persistent, widespread pattern of unconstitutional conduct of which officials have notice and subsequently react with deliberate indifference or tacit authorization." *Schrum ex rel. Kelly v. Kluck,* 249 F.3d 773, 779 (8th Cir. 2001) (quoting *Johnson,* 172 F.3d at 536). Thus, a local governing body can be sued because of "constitutional deprivations visited pursuant to governmental custom even though such a custom has not received formal approval

through the body's official decision making channels." *Monell*, 436 U.S. at 688.  A suit against a public official in his or her official capacity is in fact a suit against the entity of which the officer is an agent.  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

Although the Plaintiff contends that LPD and its employees were negligent in their investigation of the incident giving rise to this action, such alleged after-the-fact negligence does not support a claim under section 1983.  The Plaintiff has produced no evidence to demonstrate that LPD, and consequently the City of Lincoln, had an unconstitutional policy or custom that was implemented by Aksamit or Thraen that in any manner contributed to Keep's injuries.  The City of Lincoln has produced undisputed evidence to the contrary, showing that its policies and training practices are designed to ensure that officers exercise any use of force in a lawful manner.  There is no genuine issue of material fact regarding the liability of the City of Lincoln under section 1983, and the City is entitled to judgment in its favor as a matter of law.

Although Thraen out-ranked Aksamit, Thraen was not Aksamit's direct supervisor and played no role in Aksamit's training.  There is no evidence that Thraen should have anticipated Aksamit's use of force against Keep, or that Thraen was deliberately indifferent to Keep's safety by not intervening to prevent the use of force.  There is no genuine issue of material fact regarding the liability of Thraen in his official capacity under section 1983, and he is entitled to judgment in his favor as a matter of law.

Neither has the Plaintiff presented a viable claim against Aksamit in his official capacity.  If Elder-Keep's properly-executed affidavit had been presented in connection with the Defendants' earlier motion for summary judgment in their personal capacities on the section 1983 claim, however, then genuine issues of material fact would have been

9

apparent, and Aksamit would not have been released from this action in his personal capacity based on qualified immunity from suit.[5] I am left with three alternatives regarding the disposition of this action as to Aksamit. First, I could reinstate the Plaintiff's section 1983 cause of action against Aksamit in his personal capacity based on the newly submitted evidence. Second, I could enter summary judgment in favor of Aksamit on all claims due to the Plaintiff's failure to submit an adequate evidentiary record in a timely manner. Third, I could exercise my discretion to retain supplementary jurisdiction over the Plaintiff's state-law assault-and-battery claim against Aksamit.[6] I find that the third option is the most appropriate course of action, in the interests of justice. I recognize that if I decline to retain supplementary jurisdiction over the state-law assault-and-battery claim, the statute of limitations will have expired. *See* Neb. Rev. Stat. § 25-208 (Reissue 1995). I will, therefore, exercise my discretion to retain supplementary jurisdiction over the Plaintiff's state-law claim for assault and battery against Aksamit *only*, and this matter will proceed to trial as previously scheduled, on that claim alone.

IT IS ORDERED:

1. The Defendants' Motion to Strike (Filing No. 117) is denied;

---

[5] The Memorandum and Order granting summary judgment to Aksamit in his personal capacity was issued on January 4, 2005. Plaintiff did not file a motion for reconsideration under NECivR 60.1(b) within the 10 days permitted for such motion under the rule. *See* Memorandum and Order denying Motion for Rule 60 Relief (Filing No. 77).

[6] Although my Order (Filing No. 68), granting summary judgment to Thraen and Aksamit in their personal capacities, based on qualified immunity from suit under section 1983, stated that the "action will proceed against the Defendants in their official capacities only," it did not address the Plaintiff's state law claims. To the extent that the statement quoted (*id.*, p. 10) is inconsistent with my ruling herein retaining supplemental jurisdiction over the Plaintiff's state-law assault-and-battery claim against Aksamit in his personal capacity, it is hereby amended.

2. The Plaintiff's Motion for Leave to File Late Evidence and Brief (Filing No. 122) is denied;

3. The Motion for Summary Judgment submitted on behalf of Defendants Troy Aksamit and Jerome Thraen in their official capacities and the City of Lincoln (Filing No. 101) is granted; and

4. This action will proceed against Defendant Aksamit in his personal capacity on the Plaintiff's state-law claim for assault and battery, only.

DATED this 6th day of October, 2005.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge